UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| UNTIEDT'S VEGETABLE FARM, INC., | Case No. 20-CV-0597 (PJS/DTS) |
| Plaintiff, | |
| v. | ORDER |
| SOUTHERN IMPACT, LLC, | |
| Defendant. | |

---

Jessica L. Roe, Shannon N.L. Cooper, and Nicholas M. Beckman, ROE LAW GROUP, PLLC, for plaintiff.

Sarah B. Riskin, Joel O'Malley, and Robert Koneck, NILAN JOHNSON LEWIS PA, for defendant.

Defendant Southern Impact, LLC is in the business of helping employers to obtain governmental authorization to employ seasonal workers from outside of the United States. Untiedt's Vegetable Farm, LLC ("Untiedt's") retained Southern Impact to prepare and file its applications for foreign labor certifications for the 2014, 2015, and 2016 growing seasons.[1] After the United States Department of Labor ("DOL") found that Untiedt's had violated federal regulations in connection with its foreign-labor program, Untiedt's filed this action against Southern Impact, asserting claims of

---

[1] The complaint alleges that Untiedt's has contracted with Southern Impact "since 2001" to prepare its foreign labor certification applications, Compl. ¶ 22, but only the contracts governing Untiedt's 2014, 2015, and 2016 applications are at issue in this lawsuit.

negligent misrepresentation and breach of contract.  Untiedt's also seeks a declaration that the exculpatory clauses in its contracts with Southern Impact are unenforceable.

This matter is before the Court on Southern Impact's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  At the conclusion of the hearing on the motion, the Court dismissed Untiedt's negligent-misrepresentation claim from the bench.  Negligent misrepresentation must be pleaded with particularity under Fed. R. Civ. P. 9(b).  *See Trooien v. Mansour*, 608 F.3d 1020, 1028 (8th Cir. 2010).  Rule 9(b) "requires that a pleading include such matters as the time, place and contents of false representations."  *Id.* (citation and quotation marks omitted).  Untiedt's negligent-misrepresentation claim was dismissed because it did not come close to meeting the Rule 9(b) standard.

The Court did not, however, dismiss Untiedt's breach-of-contract claims.  Southern Impact had argued that those claims were barred by the contracts' exculpatory clauses.  But whether an exculpatory clause is enforceable is a fact-based question that usually cannot be resolved on a Rule 12 motion.  *See Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 923–26 (Minn. 1982) (explaining that whether an exculpatory clause is enforceable requires consideration of such fact-based questions as whether there was a disparity in bargaining power and whether the services were necessary and unavailable elsewhere).  This case is no exception.

Finally, Southern Impact argued that one of Untiedt's breach-of-contract claims—the claim for breach of the contract that related to the 2014 growing season (the "2014 contract")—is barred by the statute of limitations. The Court took that matter under advisement and now issues its decision.

## I. BACKGROUND

Untiedt's and Southern Impact entered into separate contracts related to the foreign labor certification process for the 2014, 2015, and 2016 growing seasons. Compl. ¶¶ 28–31. Pursuant to each contract, Southern Impact prepared and filed the paperwork necessary for Untiedt's to obtain authorization to employ foreign workers through the H-2A program. *See* Compl. ¶¶ 31–33, 46. The H-2A program is authorized by the Immigration Reform and Control Act of 1986, and allows agricultural employers to bring foreign workers to the United States to perform temporary or seasonal work. Compl. ¶¶ 10–11. According to the complaint, the first step in the H-2A process is to prepare and submit an agricultural job order, also known as an ETA Form 790. Compl. ¶ 16. The ETA Form 790 is submitted to the relevant state workforce agency and to DOL. Compl. ¶¶ 16–17.

As relevant to this litigation, Southern Impact submitted three ETA Form 790s on Untiedt's behalf—one in 2013 to obtain foreign labor certification for the 2014 H-2A worker period; one in 2014 to cover the 2015 period; and one in 2015 to cover the 2016

period.  *See* Compl. ¶ 46.  In each instance, Southern Impact failed to disclose on the ETA Form 790 that Untiedt's intended to deduct $2.75 per day from each H-2A laborer's paycheck to cover housekeeping and maintenance expenses.  Compl. ¶¶ 47–50.  Untiedt's alleges that Southern Impact was aware that Untiedt's took this deduction.  Compl. ¶ 49.

DOL opened an investigation into Untiedt's labor practices in August 2016.  Compl. ¶ 51.  During the course of that investigation, DOL "informed Untiedt's that the failure to include the deductions in Untiedt's H-2A documentation resulted in a violation of 20 C.F.R. § 655.122(p)."  Compl. ¶ 52.  Untiedt's argues that Southern Impact breached its contractual obligations by failing to disclose the deductions on the ETA Form 790s that it filed on Untiedt's behalf.  Compl. ¶ 70.

Southern Impact now moves to dismiss Untiedt's claim for breach of the 2014 contract, arguing that the claim is time barred.

## II.  ANALYSIS

### A.  Standard of Review

A court may dismiss a claim as untimely if it is clear from the face of the complaint that the claim is barred by the statute of limitations.  *See Joyce v. Armstrong Teasdale, LLP*, 635 F.3d 364, 367 (8th Cir. 2011).  "[T]he face of the complaint . . . include[s] public records and materials embraced by the complaint."  *Noble Sys. Corp. v.*

*Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008). To determine whether a "complaint is self-defeating based on a statute of limitations," a court must identify the relevant limitations period, the date the action was commenced, and the date the plaintiff's claims accrued. *Int'l Decision Sys., Inc. v. JDR Sols., Inc.*, No. 18-CV-2951(ECT/DTS), 2019 WL 2009249, at *3 (D. Minn. May 7, 2019). "As with any motion under Rule 12(b)(6), all factual allegations in the complaint must be accepted as true, and all reasonable inferences drawn in [the plaintiff's] favor." *Id*. (citing *Gorog v. Best Buy Co.*, 706 F.3d 787, 792 (8th Cir. 2014)).

Ordinarily if the parties present, and the Court considers, matters outside of the pleadings, a motion to dismiss must be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). But the Court may consider materials that are embraced by the complaint and matters of public record without converting the motion into one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). "[M]aterials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Id.* (citation and quotation marks omitted).[2]

---

[2] In this case, the Court considers the 2014 contract, which is attached to the complaint. ECF No. 1-1. The Court also considers the executed ETA Form 790 for the 2014 H-2A worker period and a letter from DOL granting Untiedt's application for temporary labor certification for the 2014 H-2A worker period. ECF Nos. 22-1; 22-2. Both documents were submitted by Southern Impact with its motion to dismiss.

(continued...)

### B. Statute of Limitations

Under Minnesota law, a breach-of-contract claim is subject to a six-year statute of limitations. *See* Minn. Stat. § 541.05, subd. 1(1). The limitations period begins to run when the cause of action accrues. *Id.* § 541.01. This action was commenced on March 14, 2020, when Southern Impact was served with the summons and complaint.[3] ECF No. 5. A breach-of-contract claim that accrued prior to March 14, 2014 is therefore time barred. *See Int'l Decision Sys.*, 2019 WL 2009249, at *4. The parties dispute whether Untiedt's claim for breach of the 2014 contract accrued before March 14, 2014.

Southern Impact argues that a breach-of-contract claim accrues at the time of the alleged breach and that the alleged breach of the 2014 contract occurred when Southern Impact filed the ETA Form 790 without disclosing the housekeeping deduction. Compl.

---

[2](...continued)
Untiedt's has not challenged the authenticity of these documents, and the Court finds that the documents are public records or embraced by the complaint (or both). *See Zean*, 858 F.3d at 524–28 (business records submitted by defendant were embraced by the complaint and properly considered on motion to dismiss); *Little Gem Life Scis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008) ("SEC filings relied upon by the district court for dates and details" were public records properly considered on motion to dismiss); *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) ("an Administrative Notice issued by the USDA . . . is a public record" properly considered by the court on motion to dismiss).

[3] In a diversity action, "state commencement rules apply because they are 'part and parcel of the statute of limitations.'" *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 867 (8th Cir. 2000) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)). Under Minn. R. Civ. P. 3.01(a), a civil action is commenced against a defendant "when the summons is served upon that defendant."

¶ 70.  Documents embraced by the complaint make clear that the ETA Form 790 for the 2014 H-2A worker period was submitted no later than December 2, 2013.[4]  ECF Nos. 22-1; 22-2.  If Southern Impact's theory is correct, then, Untiedt's claim for breach of the 2014 contract is untimely, as it accrued before March 14, 2014.

Untiedt's disputes Southern Impact's characterization of Minnesota law.  According to Untiedt's, a breach-of-contract claim does not accrue until the claim could survive a motion to dismiss, and damages are a necessary element of a breach-of-contract claim.  In Untiedt's view, then, its breach-of-contract claim could not have survived a motion to dismiss—and thus did not accrue—until Untiedt's was damaged by Southern Impact's failure to disclose the housekeeping deduction on the ETA Form 790.  Untiedt's contends that the failure to disclose the housekeeping deduction was not itself unlawful; rather, the failure to disclose the housekeeping deduction simply meant

---

[4]The executed ETA Form 790 for the 2014 H-2A worker period is dated November 25, 2013.  ECF No. 22-1.  A letter from DOL indicates that Untiedt's application for temporary labor certification was "accepted for consideration" on December 2, 2013.  ECF No. 22-2.  This application includes the ETA Form 790.  *See* Compl. ¶ 17.

Even without considering these documents, the Court would find that the ETA Form 790 was necessarily filed before March 14, 2014.  The complaint alleges that Southern Impact submitted the ETA Form 790 covering the 2014 H-2A worker period on Untiedt's behalf, and that an H-2A worker period runs from January to November of the relevant year.  Compl. ¶¶ 28, 46.  Therefore, the ETA Form 790 must have been filed prior to January 2014—and January 2014 is, of course, earlier than March 14, 2014.

that Untiedt's could not later *take* the deduction.[5]  Therefore, says Untiedt's, it was not harmed by Southern Impact's breach of the 2014 contract until March 14, 2014, when Untiedt's issued its first payroll checks to the newly-arrived H-2A workers and took the housekeeping deduction.[6]

The vast majority of courts that have addressed the issue—including the Eighth Circuit, whose decisions are binding on this Court—agree with Southern Impact that, under Minnesota law, a breach-of-contract action accrues upon breach.  *See TCF Nat'l Bank v. Mkt. Intel., Inc.*, 812 F.3d 701, 710 (8th Cir. 2016) ("Under Minnesota law, the

---

[5]In its briefing, Untiedt's seemed to suggest that taking the housekeeping deduction was unlawful regardless of whether the deduction was disclosed on the ETA Form 790.  *See* ECF No. 25 at 19 ("Merely submitting the Form 790 without including the deductions did not harm Untiedt's; in fact, the Form itself complied with the law because such deductions are not permitted under 20 C.F.R. § 655.122(p).").  At oral argument, Untiedt's clarified that if the deductions had been properly disclosed on the ETA Form 790, the deductions would have been lawful.  The text of the regulation does not clearly contradict or corroborate Untiedt's statement.  For purposes of ruling on Southern Impact's motion to dismiss, the Court accepts Untiedt's statement as true.

[6]At oral argument, counsel for Untiedt's put forward the alternate theory that a claim for breach of the 2014 contract could not have accrued at the time that the ETA Form 790 was filed because Untiedt's was not aware of the error.  Minnesota law is clear, however, that a breach-of-contract claim accrues at the time of the alleged breach even if "the aggrieved party is unaware of the facts constituting the breach."  *Paisley Park Enters., Inc. v. Boxill*, 299 F. Supp. 3d 1074, 1085 (D. Minn. 2017); *see also Dalton v. Dow Chem. Co.*, 158 N.W.2d 580, 584 (Minn. 1968) ("[I]gnorance of a cause of action not involving continuing negligence or trespass, or fraud on the part of the defendant, does not toll the accrual of a cause of action[].").  In other words, Minnesota applies the occurrence rule, not the discovery rule, in determining when a claim for breach of contract accrues.

cause of action for a contract-based claim 'accrue[s] at the time of the breach, even though actual damages occur later.'" (quoting *Parkhill v. Minn. Mut. Life Ins. Co.*, 174 F. Supp. 2d 951, 956 (D. Minn. 2000))).[7]

---

[7]*See also Botten v. Shorma*, 440 F.3d 979, 981 (8th Cir. 2006) (applying Minnesota law and finding breach-of-contract action untimely because "[t]he cause of action arose . . . when the terms of Botten's contract were breached."); *Int'l Decision Sys.*, 2019 WL 2009249, at *4; *Ally Bank v. Lenox Fin. Mortg. Corp.*, No. 16-CV-2387 (DSD/DTS), 2017 WL 830391, at *3 (D. Minn. Mar. 2, 2017) ("A cause of action accrues—and the statute of limitations begins to run—at the time of the alleged breach." (citation and quotation marks omitted)); *H.F.S. Props. v. Foot Locker Specialty, Inc.*, No. 15-CV-3273 (MJD/SER), 2017 WL 455934, at *8 (D. Minn. Feb. 2, 2017) ("Under Minnesota law, the statute of limitations for breach of contract is six years from the date of the breach."); *OmegaGenesis Corp. v. Mayo Found. for Med. Educ. & Rsch*, 132 F. Supp. 3d 1119, 1126–27 (D. Minn. 2015) (finding both that statute of limitations had run on contract claim and that no contractual damages were available); *Residential Funding Co. v. Embrace Home Loans, Inc.*, 27 F. Supp. 3d 980, 983 (D. Minn. 2014) ("Minnesota law requires that an action for breach of contract be commenced within six years of the breach." (citation and quotation marks omitted)); *Hegseth v. Am. Fam. Mut. Ins. Grp.*, 877 N.W.2d 191, 199 (Minn. 2016) (Lillehaug, J., concurring) ("A contract claim is a contract claim and a tort claim is a tort claim. A claim alleging breach of an insurance contract should be treated like any other contract claim. Thus, the applicable statute of limitations should be the one for breach of contract, which begins to run at the time of the alleged breach."); *Levin v. C.O.M.B. Co.*, 441 N.W.2d 801, 803 (Minn. 1989) ("[I]t has long been settled that a cause of action for breach of contract accrues on the breach of the terms of the contract."); *Bachertz v. Hayes-Lucas Lumber Co.*, 275 N.W. 694, 697 (Minn. 1937) ("[A] cause of action for breach of contract accrues immediately on a breach, though actual damages resulting therefrom do not occur until afterwards."); *Isanti Pines Tree Farm, LLC v. Swanson*, A16-1721, 2017 WL 1436094, at *2 (Minn. Ct. App. Apr. 24, 2017) ("A cause of action for breach of contract accrues at the time the contract is breached."); *St. Paul Fire & Marine Ins. Co. v. A.P.I., Inc.*, 738 N.W.2d 401, 408 (Minn. Ct. App. 2007) ("Generally, a cause of action for breach of contract accrues when the terms of the contract are breached."); *Jacobson v. Bd. of Trs. of the Tchrs. Ret. Ass'n*, 627 N.W.2d 106, 110 (Minn. Ct. App. 2001) ("A cause of action for breach of contract generally accrues at the time of the alleged breach. This is true even when actual damages resulting from

(continued...)

Untiedt's relies on *TCF National Bank v. Market Intelligence, Inc.*, No. 11-CV-2717 (JRT/AJB), 2012 WL 3031220, at *2 (D. Minn. July 25, 2012), in arguing that a breach-of-contract claim accrues not at the time of the alleged breach, but only when the claim can survive a motion to dismiss. But the language on which Untiedt's relies[8] pertained to fraud and tort claims, not contract claims, as there were no contract claims pending before the court at the time that it issued its order. Indeed, after the plaintiff amended its complaint to include a claim for breach of contract, the same court explained in a later order that a breach-of-contract claim accrues upon breach, regardless of when damages are incurred. *TCF Nat'l. Bank v. Mkt. Intel., Inc.*, No. 11-CV-2717 (JRT/LIB), 2014 WL 5205442, at *11 (D. Minn. Oct. 14, 2014), *aff'd*, 812 F.3d 701 (8th Cir. 2016).

It is true that the Minnesota Supreme Court has at times framed the question of when a breach-of-contract claim accrues in terms of when the claim could survive a motion to dismiss. Even in those cases, however, the court's analysis has focused on the

---

[7](...continued)
the breach do not occur until some time afterwards or when the aggrieved party was ignorant of the facts constituting the breach." (internal citations omitted)); *Pederson v. Am. Lutheran Church*, 404 N.W.2d 887, 889 (Minn. Ct. App. 1987) ("A cause of action for breach of contract accrues at the time of the alleged breach.").

[8]In denying the defendant's motion to dismiss various fraud and tort claims, the court explained that "[t]he limitations period begins to run 'when the cause of action accrues, that is, when the plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted.'" *TCF Nat'l. Bank*, 2012 WL 3031220, at *2 (quoting *Antone v. Mirviss*, 720 N.W.2d 331, 335 (Minn. 2006)). *Antone*, in turn, involved a claim for legal malpractice, not a breach-of-contract claim.

date of the breach and has made clear that accrual is not postponed by delayed damages. For example, in *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828 (Minn. 2011), the court concluded that the plaintiff's claims for breach of contract and promissory estoppel were barred by the applicable statute of limitations.[9] Hamann, a doctor, sued his employer after it discontinued a policy that allowed physicians over the age of 60 who met certain criteria to opt out of night duty without taking a pay cut. *Id.* at 831. The clinic informed Hamann in 2005 that it was discontinuing the policy, but Hamann did not suffer any financial harm until 2008, when his pay was cut after he opted out of night duty. *Id.* at 830–31. Hamann sued and the clinic moved to dismiss, arguing that the statute of limitations barred Hamann's claims. The critical question before the court was whether Hamann's breach-of-contract claim accrued at the time the policy was discontinued (2005) or at the time Hamann that incurred monetary damages (2008).

The court began its analysis by reciting the "general principle[]" that "[a] cause of action accrues when all of the elements of the action have occurred, such that a cause of action could be brought and would survive a motion to dismiss for failure to state a

---

[9]The parties in *Park Nicollet* agreed that the two-year statute of limitations governing actions for recovery of wages applied to both claims, *see* Minn. Stat. § 541.07(5), rather than the six-year statute of limitations governing other contract actions, *see id.* § 541.05, subd. 1(1).

claim." *Id.* at 832.¹⁰  In the same paragraph, however, the court relied on one of its prior cases, which the court described as holding that "a cause of action for breach of contract accrues at the time of the breach, even if actual damages resulting therefrom do not occur until afterwards." *Id.* (describing the holding of *Bachertz v. Hayes-Lucas Lumber Co.*, 275 N.W. 694, 697 (Minn. 1937)).  Moreover, the court defined the elements of a breach-of-contract claim as "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent . . . and (3) breach of the contract by defendant." *Id.* at 833.  In a footnote, the court noted that it had "recognized that the plaintiff may not have to allege that the breach caused damages in order to state a claim for breach of contract." *Id.* at 833 n.5.¹¹

---

¹⁰*Park Nicollet* cited a product-liability case—*Dalton v. Dow Chemical Co.*, 158 N.W.2d 580 (Minn. 1968)—in support of this general rule.  In *Dalton*, the plaintiff suffered serious medical complications allegedly caused by exposure to products manufactured by Dow Chemical Company.  The court held that "[u]nder the circumstances disclosed by the record herein, the action would accrue at such time as it could be brought in a court of law without dismissal for failure to state a claim.  An action for negligence cannot be maintained, nor does the statute of limitations begin to run, until damage has resulted from the alleged negligence." *Id.* at 585 (internal citations omitted).  *Dalton* did not involve a breach-of-contract claim.

¹¹Even though *Park Nicollet* was equivocal on the issue, the Eighth Circuit has continued to express the view that, under Minnesota law, damages are an element of a breach-of-contract claim.  *See Reuter v. Jax Ltd.*, 711 F.3d 918, 920 (8th Cir. 2013) ("[U]nder Minnesota law, '[a] breach of contract claim fails as a matter of law if the plaintiff cannot establish that he or she has been damaged by the alleged breach.'" (quoting *Jensen v. Duluth Area YMCA*, 688 N.W.2d 574, 578–79 (Minn. Ct. App. 2004))); *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir.
(continued...)

The court explained that Hamann's breach-of-contract claim was premised on the allegations that a contract was formed when Hamann's employer adopted the night-duty policy in 1995, that Hamann was eligible to opt out of night duty without suffering a pay cut under the terms of the contract, and that the contract was breached in April 2005 when Hamann was informed that the policy had been discontinued. Thus, according to the court, "as of April 2005, Hamann's breach-of-contract claim would have survived a motion to dismiss." *Id.* at 833.

The court commented in a footnote that "the complaint does allege that Hamann suffered damages in April 2005 as a result of Park Nicollet's breach." *Id.* at 833 n.5. The court did not elaborate, but presumably it was referring to the fact that in April 2005 Hamann wanted to opt out of night duty without suffering financial consequences, and

---

[11](...continued)
2013) ("A successful breach-of-contract claim under Minnesota law has four elements: (1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." (citation and quotation marks omitted)); *see also Moreno v. Wells Fargo Bank, N.A.*, No. 18-CV-2760 (PJS/DTS), 2020 WL 362799, at *6 (D. Minn. Jan. 22, 2020) ("Because the Morenos cannot establish that they have been damaged in any way by Wells Fargo's alleged breach of the mortgage contract, their breach-of-contract claim fails as a matter of law."); *Unitherm Food Sys., Inc. v. Hormel Foods Corp.*, No. 14-CV-4034 (JNE/BRT), 2016 WL 4005649, at *3 (D. Minn. July 25, 2016) ("While the exact amount of damages may be reserved, Unitherm's breach of contract claim fails as a matter of law if Unitherm cannot establish that it suffered some cognizable damages."); *Ackerman v. PNC Bank, N.A.*, No. 12-CV-0042, (SRN/JSM), 2013 WL 869379, at *6 (D. Minn. Mar. 7, 2013) ("Because damages [are] a necessary element of the breach of contract claim itself under Minnesota law, the Court cannot find for Plaintiff in the absence of proof of damages.").

he was denied the opportunity to do so. This fact played little role in the court's analysis, however, as its placement in a footnote indicates. Moreover, the court said later in its opinion "[t]hat Hamann did not fully appreciate the effects of Park Nicollet's April 2005 breach until some years later does not postpone the accrual of his cause of action based on that breach . . . ." *Id.* at 836.

In short, although *Park Nicollet* is not a model of clarity, nothing in the opinion is inconsistent with the rule that has been applied by the overwhelming majority of courts—including the Eighth Circuit and the Minnesota Supreme Court itself—that, under Minnesota law, "a cause of action for breach of contract accrues at the time of the breach, even if actual damages resulting therefrom do not occur until afterwards." *Id.* at 832 (describing the holding of *Bachertz*, 275 N.W. at 697). Untiedt's claim with respect to the 2014 contract therefore accrued at the time of the alleged breach—that is, no later than December 2, 2013. That breach occurred more than six years before this action was commenced, and therefore Untiedt's claim for breach of the 2014 contract is time barred.

Even if Untiedt's is correct that a breach-of-contract claim does not accrue until damages have been incurred, the Court would still find that Untiedt's claim for breach of the 2014 contract is time barred. Untiedt's argues that it was not harmed by the alleged breach until it issued its first payroll checks on March 14, 2014 and deducted an amount for housekeeping expenses—a deduction that would have been lawful if

Southern Impact had filed accurate forms, but that was unlawful because Southern Impact had failed to do so. Clearly, however, Untiedt's was harmed by that breach prior to March 14, 2014 in at least two ways:

First, Untiedt's alleges that it paid Southern Impact to prepare and file an *accurate* ETA Form 790 for the 2014 H-2A worker period. Compl. ¶¶ 13, 42. Southern Impact allegedly breached the contract by filing an *inaccurate* ETA Form 790 on or before December 2, 2013. At any point thereafter, Untiedt's could have sued Southern Impact for breach of contract and recovered the money that it had paid to Southern Impact[12] because Untiedt's did not receive the benefit of its bargain. Such a claim obviously would have survived a motion to dismiss for failure to state a claim.

Second, Untiedt's suffered additional harm at the moment that the inaccurate ETA Form 790 was filed. Untiedt's wanted to deduct $2.75 from each H-2A laborer's paycheck to cover housekeeping and maintenance expenses. Had Southern Impact filed an accurate ETA Form 790, Untiedt's would have been able to do so. But Southern

---

[12]The 2014 contract states that "Southern Impact will provide [Untiedt's] with an invoice . . . [and] [p]ayment is due upon receipt of invoice and prior to submission of USCIS petition. In the event an application is cancelled, $500 is non-refundable." ECF No. 1-1 at 2. The complaint alleges that Southern Impact submitted the application paperwork covering the 2014 H-2A worker period, which runs from January to November of 2014. Compl. ¶¶ 28, 46. The USCIS petition for the 2014 H-2A worker period was necessarily submitted before January 2014, and payment was due prior to the date of submission. Based on the face of the complaint, then, Untiedt's made payment to Southern Impact no later than December 2013 and thus could have sued to recover that payment long before March 14, 2014.

Impact allegedly breached the contract by filing an inaccurate ETA Form 790.  From that point forward, Untiedt's was legally barred from operating its business in the manner that it wanted.  Untiedt's was thus damaged by the breach long before it issued the first paychecks to H-2A workers on March 14, 2014.  *See TCF Nat'l Bank*, 2012 WL 3031220, at *2 (where damages are required for a claim to accrue, "[c]ourts are to interpret 'damage' broadly, meaning 'any compensable damage, whether specifically identified in the complaint or not'" (quoting *Antone*, 720 N.W.2d at 336)).

For these reasons, the Court finds that Untiedt's claim for breach of the 2014 contract accrued more than six years before this action was commenced and therefore is barred by the statute of limitations.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT plaintiff's motion to dismiss [ECF No. 19] is granted in part and denied in part as follows:

1. The motion is GRANTED with respect to Count III, and Count III is DISMISSED WITHOUT PREJUDICE.

2. The motion is GRANTED with respect to Count II insofar as plaintiff alleges that defendant breached the contract covering the 2014 H-2A worker period, and this claim is DISMISSED WITH PREJUDICE.

3. The motion is DENIED in all other respects.

Dated:  October 8, 2020                                       s/Patrick J. Schiltz
                                                              Patrick J. Schiltz
                                                              United States District Judge